JAN I. GOLDSMITH, City Attorney
DONALD R. WORLEY, Assistant City Attorney
WALTER C. CHUNG, Deputy City Attorney
California State Bar No. 163097
    Office of the City Attorney
    1200 Third Avenue, Suite 1100
    San Diego, California 92101-4100
    Telephone:  (619) 533-5800
    Facsimile:  (619) 533-5856

Exempt from fees per Gov't Code § 6103
To the benefit of the City of San Diego

Attorneys for Defendant

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS GIBSON,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF SAN DIEGO, and DOES 1 to 20, inclusive,<br><br>    Defendants. | Case No. 12cv0159 H WMC<br><br>DEFENDANT CITY OF SAN DIEGO'S SUPPLEMENTAL BRIEF WITH REGARD TO ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT<br><br>[F.R.C.P. RULE 12(B)(6)]<br><br>Date: April 25, 2012<br>Time: 1:30 p.m.<br>Judge: Hon. Marilyn L. Huff<br>Court Room: 13<br>Trial: None set. |

Document Number: 345720

City of San Diego's Supp. Brief re:
Motion to Dismiss

12CV0159H WMC

**TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................1

II. LEGAL ARGUMENT ........................................................................................1

   A. When Municipal Legislation Constitutes State Action ............................1

   B. The State Delegated Authorization Must Allow the City to Modify the Law of Contracts in Order for a Municipal Ordinance to be State Action ..........................3

   C. The Decision in *Retired Employees Association of Orange County, Inc. v. County of Orange* is Not Applicable to the City, a Charter City ..........................................4

   D. The *Pullman* Abstention Doctrine Applies .............................................6

   E. State Court Cases......................................................................................8

III. CONCLUSION ..................................................................................................11

Document Number: 345720

City of San Diego's Supp. Brief re:
Motion to Dismiss

i

12CV0159H WMC

# TABLE OF AUTHORITIES

**Cases**

*Allegheny County v. Frank Mashuda Co.* (1959) 360 U.S. 185 ........................................................ 7

*Baggett v. Bullitt* (1964) 377 U.S. 360 .............................................................................................. 7

*Brown v. City of Berkeley* (1970) 57 Cal.App.3d 223 ...................................................................... 5

*Campen v. Greiner* (1971) 15 Cal.App.3d 836 ................................................................................. 5

*Charles v. Baesler* (6th Cir. 1990) 910 F.2d 1349 ............................................................................ 3

*City and County of San Francisco v. United Railroads of San Francisco* (9th Cir. 1911)
    190 Fed. 507 ................................................................................................................................ 1

*City of Louisville v. Cumberland Telephone & Telegraph Co.* (6th Cir. 1907) 155 Fed.
    725 ........................................................................................................................................... 2, 3

*E & E Hauling v. Forest Preserve Dist.* (7th Cir. 1980) 613 F.2d 675 ............................................. 4

*Fireman's Fund Ins. Co. v. City of Lodi, Cal.* (9th Cir. 2001) 271 F.3d 911 .................................... 2

*Gilberston v. Albright* (9th Cir. 2004) 381 F.3d 965 ........................................................................ 7

*Hamilton Gaslight and Coke Co. v. Hamilton City* (1892) 146 U.S. 258 ......................................... 2

*Harness v. City of Englewood* (D.C. Colo. 1936) 15 F.Supp. 140 .................................................... 3

*Harris County Commissioners Court v. Moore* (1975) 420 U.S. 77 ................................................. 7

*Hays v. Port of Seattle* (1920) 251 U.S. 233 ................................................................................. 3, 4

*Horwitz-Matthews, Inc. v. City of Chicago* (7th Cir.1996) 78 F.3d 1248 ........................................ 4

*Jackson Sawmill Co. v. United States* (8th Cir. 1978) 580 F.2d 302 ................................................ 3

*Memphis v. Cumberland Telephone Co.* (1910) 218 U.S. 624 .......................................................... 2

*Railroad Commission of Texas v. Pullman Co.* (1941) 312 U.S. 496 ........................................... 7, 8

*Retired Employees Association of Orange County, Inc. v. County of Orange* (Cal. 2011)
    52 Cal. 4th 1171 .................................................................................................................. 4, 5, 6

*San Bernardino Pub. Employees Association v. City of Fontana* (1998) 67 Cal.App.4th
    1215 ............................................................................................................................................. 8

*San Francisco Fire Fighters v. City and County of San Francisco* (1977) 68 Cal.App.3d
    896 ............................................................................................................................................... 5

Document Number: 345720                                ii

City of San Diego's Supp. Brief re:                                                  12CV0159H WMC
Motion to Dismiss

*TM Park Ave. Assocs. v. Pataki* (2d Cir.2000) 214 F.3d 344 .......................................................... 4

*United States v. Kagama* (1886) 118 U.S. 375 ................................................................................. 1

*Younger v. Harris* (1971) 401 U.S. 37 .......................................................................................... 6, 7

**Statutes**

N.H.R.S.A. c. 31, section 60 ............................................................................................................... 1

**Constitutional Provisions**

Art. 11, section 5 of the California Constitution ............................................................................. 2

Art. I, section 10, cl. 1of the U.S. Constitution ............................................................................... 1

California Constitution, art. I, section 9 ......................................................................................... 3

Charter section 141 ............................................................................................................................. 6

Charter section 144 ............................................................................................................................. 6

Charter section 40 ............................................................................................................................... 5

Charter section 99 ............................................................................................................................... 5

# I.

# INTRODUCTION

Pursuant to this Court's Order Vacating the Hearing and Scheduling Order for Additional Briefing dated March 15, 2012, Defendant City of San Diego ("City") submits the following requested briefing.

# II.

# LEGAL ARGUMENT

A.   **When Municipal Legislation Constitutes State Action**

As the United States Supreme Court stated long ago, all sovereign authority "within the geographical limits of the United States" resides either with "the Government of the United States, or [with] the States of the Union. There exist within the broad domain of sovereignty but these two. There may be cities, counties, and other organized bodies with limited legislative functions, but they are all derived from, or exist in, subordination to one or the other of these." (*United States v. Kagama* (1886) 118 U.S. 375, 379.) Accordingly, a state may act through a municipal corporation to which it has delegated powers of legislation, but, where the ordinance of such municipal corporation is relied upon as constituting the alleged impairment, it must be shown to have been enacted pursuant to the legislative authority of the state; otherwise it is not state action. (*City and County of San Francisco v. United Railroads of San Francisco* (9th Cir. 1911) 190 Fed. 507, 510.)

An example of authority delegated by a state to a municipality for purposes of Art. I, section 10, cl. 1, of the U.S. Constitution ("Contract Clause") is provided in *Lavoie v. Bigwood* (1st Cir. 1972) 457 F.2d 7. In that case, the State of New Hampshire delegated its zoning power to the cities and towns of the state. The State of New Hampshire accomplished the delegation through the enactment of N.H.R.S.A. c. 31, section 60. That state statute provides, "For the purpose of promoting health, safety, morals, or the general welfare of the community, the legislative body of any city or town is empowered to regulate and restrict the height, number of stories and size of buildings and other structures, lot sizes, the percentage of lot that may be occupied, the size of yards, courts and other open spaces, the density of population and the

Document Number: 345720

City of San Diego's Supp. Brief re:
Motion to Dismiss

1

12CV0159H WMC

location and use of buildings, structures and land for trade, industry, residence or other purposes." (*Id.*)

Another example involving a municipal ordinance and a claim under the Contracts Clause can be found in *Fireman's Fund Ins. Co. v. City of Lodi, Cal.* (9th Cir. 2001) 271 F.3d 911. In that case, the City of Lodi adopted an ordinance which declared the presence of any unpermitted hazardous substance in the environment a *per se* nuisance. (*Id.* at 919.) The City of Lodi adopted this ordinance pursuant to a state grant of authority contained in Cal. Gov. Code section which states, "By ordinance the city legislative body may declare what constitutes a nuisance." (*Id.* fn. 7.)

Accordingly, not all municipal ordinances come within the purview of the Contracts Clause. (*Hamilton Gaslight and Coke Co. v. Hamilton City* (1892) 146 U.S. 258). Rather, there must be a specific grant of authorization. In spite of this, Plaintiff argues that the City's adoption of Ordinance O-20105 (hereinafter simply referred to as "O-20105") constituted "state" action merely because the City derived its power to enact ordinances from a general grant of authority of the City to manage its own affairs under Art. 11, section 5 of the California Constitution. (Plaintiff's Opposition to the City's Motion to Dismiss10:13-25.)

Plaintiff's argument, taken to its logical conclusion, would make the enactment of any ordinance by the City for anything from street sweeping to library hours "state" action. As far back as 1907, courts have recognized the fallacy of this argument. "A municipal ordinance may be the exercise of a delegated legislative power conferred upon it as one of the political subdivisions of the state. But, to be given the effect and force of a law of the state, it must have been enacted in the exercise of some legislative power conferred by the state in the premises." (*City of Louisville v. Cumberland Telephone & Telegraph Co*. (6th Cir. 1907) 155 Fed. 725, which was cited with approval by the United States Supreme Court in *Memphis v. Cumberland Telephone Co*. (1910) 218 U.S. 624, 630-31.)

In *City of Louisville*, the court ordered dismissed a complaint seeking to restrain enforcement of a municipal ordinance regulating charges for telephone service. The plaintiff alleged that the municipal ordinance violated the Contracts Clause. (*City of Louisville, supra,* 155

Document Number: 345720

City of San Diego's Supp. Brief re:
Motion to Dismiss

2

12CV0159H WMC

1  Fed. at 728.)  The complaint also asserted that municipal ordinance was enacted without authority
2  under either the state constitution of legislature. (*Id.* at 729.)
3         The court held that to be given the effect and force of a law of a state, a municipal
4  ordinance had to be enacted in the exercise of some legislative power conferred by the state on
5  that subject. (*Id.*)  For example, if the state had conferred authority upon the municipality to
6  establish and enforce reasonable rates for telephone service, the establishment of rates under such
7  power would be the establishment of rates by the state itself. (*Id.*)  However, such was not and
8  could not be the situation since it was alleged by the plaintiff that the ordinance was beyond the
9  powers of the city and contrary to the state law. (*Id.* at 730.)  Thus, where the complaint's
10 allegations showed that no authority was conferred upon the city to do what was done, no cause
11 of action lay based on the Contract Clause. (*Id.*  See also *Harness v. City of Englewood* (D.C.
12 Colo. 1936) 15 F.Supp. 140, 143, claim that "the municipality and its officials have violated the
13 State Constitution" did not confer federal jurisdiction.)
14        Similarly, in this case, Plaintiff alleges that O-20105 was made in contravention of the
15 California Constitution.  Specifically, Plaintiff avers that O-20105 contravenes the contract clause
16 of the California Constitution, art. I, section 9. (Complaint ¶¶ 37(a), 44(a).)  That being the case,
17 just like in *City of Lousiville,* O-20105 cannot be a valid exercise of delegated authority under the
18 California Constitution if Plaintiff alleges the ordinance violates the California Constitution.
19        Without a valid delegation of authority by the California Constitution or the California
20 Legislature, O-20105 pertains to a strictly municipal affair and no state action is involved.  With
21 no state action, the Contracts Clause is not implicated by Plaintiff's claim for relief.
22 **B.    The State Delegated Authorization Must Allow the City to Modify the Law of Contracts in Order for a Municipal Ordinance to be State Action**
23
24        "A simple breach of contract by a governmental entity does not impair the obligation of
25 the breached contract." (*Charles v. Baesler* (6th Cir. 1990) 910 F.2d 1349, 1356, citing *Hays v.
26 Port of Seattle* (1920) 251 U.S. 233, 237-38.) *See also Jackson Sawmill Co. v. United States* (8th
27 Cir. 1978) 580 F.2d 302, 311-12, "an individual breach of contract . . . does not reach
28 constitutional dimensions and create a cause of action based on the contracts clause." *E & E*

Document Number: 345720    3    
City of San Diego's Supp. Brief re:    12CV0159H WMC
Motion to Dismiss

*Hauling v. Forest Preserve Dist.* (7th Cir. 1980) 613 F.2d 675, 678, "Mere refusal to perform a contract by a state does not raise a constitutional issue.") Rather, "[t]he state, like any private party, must be able to breach contracts without 'turning every breach ... into a violation of the federal Constitution.' (citation.)" (*TM Park Ave. Assocs. v. Pataki* (2d Cir.2000) 214 F.3d 344, 348-49.) Therefore, a distinction exists between the impairment of a contract and the mere breach of a contract. An impairment raises a constitutional question, a mere breach does not.

The line between mere breach and unconstitutional impairment is crossed where the state or local government action forecloses the possibility of damages or an equivalent remedy. (*Hays, supra,* 251 U.S. at 237; *Horwitz-Matthews, Inc. v. City of Chicago* (7th Cir.1996) 78 F.3d 1248, 1250-51.) Therefore, in order for a municipal ordinance to be considered state action, the delegation of authority by the state to the municipality must have allowed for the local ordinance to foreclose the possibility of any remedy for an alleged breach. Thus, for example, where a state passes legislation that would prevent a local government from fulfilling its obligations under a contract, there is no available damages remedy, because the breaching local government is prevented by state law from performing. (*E & E Hauling, supra*, 613 F.2d at 679.) In such a case, a contract would be unconstitutionally impaired. On the other hand, where a city breaches a contract without a state legislative mandate as a defense, nothing generally prevents or excuses the city from performing its obligations, and thus the city will be liable for damages. (*Horwitz-Matthews, supra,* 78 F.3d at 1251.)

"[U]nless the city council has been delegated authority by the state to modify the law of contracts . . . there is no impairment of the obligation of the city's contracts." (*Id.*) O-20105 does not foreclose Plaintiff's ability to seek damages based on a breach of contract theory. Therefore, the Contract Clause is not implicated in Plaintiff's claim for relief as there has been no impairment of any contract as a matter of law.

C. **The Decision in *Retired Employees Association of Orange County, Inc. v. County of Orange* is Not Applicable to the City, a Charter City**

The California Supreme Court's decision in *Retired Employees Association of Orange County, Inc. v. County of Orange* (Cal. 2011) 52 Cal. 4th 1171 ("*REAOC*") is not applicable to

Document Number: 345720
City of San Diego's Supp. Brief re:
Motion to Dismiss

4

12CV0159H WMC

1 the City because various provisions of the City's Charter prevents the formation of long term
2 implied contracts.
3         In *REAOC*, the Ninth Circuit Court of Appeal certified the following question of law to
4 the California Supreme Court, "Whether, as a matter of California law, a California county and its
5 employees can form an implied contract that confers vested rights to health benefits on retired
6 county employees." (*Id.* at 1176.)  In answering this question, the California Supreme Court
7 found that a county may be bound by an implied contract under California law *if there is no*
8 *legislative prohibition against such arrangements, such as a statute or ordinance*. (*Id.* at 1176,
9 citation omitted, emphasis added.)
10        The City is a charter city.  The City's charter is the equivalent of a local constitution.  It is
11 the supreme organic law of the city, subject only to conflicting provisions in the federal and state
12 constitutions and to preemptive state law. (*San Francisco Fire Fighters v. City and County of San*
13 *Francisco* (1977) 68 Cal.App.3d 896, 898; *Brown v. City of Berkeley* (1970) 57 Cal.App.3d 223,
14 231.)  "[Charter] cities may make and enforce all ordinances and regulations subject only to
15 restrictions and limitations imposed in their several charters. . . .  Within its scope, such a charter
16 is to a city what the state Constitution is to the state." (*Campen v. Greiner* (1971) 15 Cal.App.3d
17 836, 840.)
18        In the case of the City, the City's Charter contains various provisions that would prohibit
19 the formation of an implied contract for retiree health benefits that last for an infinite period of
20 time.  First, section 99 of the City's Charter holds, "No contract, agreement obligation extending
21 for a period of more than five years may be authorized except by ordinance adopted by a two-
22 thirds' majority vote of the members elected to the Council after holding a public hearing which
23 has been duly noticed in the official City newspaper at least ten days in advance." (Exhibit "A" to
24 the contemporaneously filed Notice of Lodgment ("NOL.")  Since Plaintiff likely will live longer
25 than five years post-retirement, no implied contract for health benefits can be formed as it would
26 violate Charter section 99.
27        Second, the City's Charter prevents the City from entering into contracts other than
28 express contracts.  Section 40 of the City's Charter requires the City Attorney "to prepare in

writing all ordinances, resolutions, contracts, bonds, or other instruments in which the City is concerned, and to endorse on each approval of the form or correctness thereof." (Exhibit "B" to the NOL.) Accordingly, because the City's Charter requires all contracts be expressed in writing, drafted by the City Attorney and endorsed by the City Attorney as to form and correctness, no implied contract for vested health benefits in retirement could be formed in the City.

Third, if the health benefits in retirement are a pension benefit, as Plaintiff contends (Complaint ¶ 35), then under the City's Charter, only an ordinance can provide Plaintiff with said benefit. Under Section 141 of the City's Charter, the City is authorized to establish a retirement system by ordinance only. (Exhibit "C" to the NOL.) Pursuant to Section 144 of the City's Charter, the Board of Administration of the San Diego City Employees' Retirement System determines "under such general ordinances as may be adopted by the Council as to the conditions under which persons may be admitted to benefits of any sort under the retirement system." (Exhibit "D" to the NOL.) Therefore, if the retiree health benefit is a pension benefit, as Plaintiff contends, an implied contract would be insufficient to grant such benefit as the Board of Administration of the San Diego City Employees' Retirement System could not administer this benefit without contravening the City's Charter.

The decision in *REAOC* did nothing more than confirm prior California case law that an implied contract can be formed in California. However, the California Supreme Court noted that no contract can be implied by act or conduct if a statutory or legislative prohibition exists which prevents the formation of implied contracts. With regard to the City, several City Charter provisions exist to protect the City and its citizens from the formation of implied contracts. These provisions require all contracts with the City to be in writing, drafted by the City Attorney and adopted by ordinance. Accordingly, the decision in *REAOC* is not applicable to the City.

D.   The *Pullman* Abstention Doctrine Applies

The *Younger v. Harris* (1971) 401 U.S. 37 abstention doctrine, as originally articulated by the Supreme Court, "forbid[s] federal courts [from] stay[ing] or enjoin[ing] pending state court proceedings." (*Id.* at 41.) "*If* a state-initiated proceeding is ongoing, and *if* it implicates important state interests ..., and *if* the federal litigant is not barred from litigating federal constitutional

Document Number: 345720

City of San Diego's Supp. Brief re:  
Motion to Dismiss

6

12CV0159H WMC

issues in that proceeding, *then* a federal court action that would enjoin the proceeding, or have the practical effect of doing so, would interfere in a way that *Younger* disapproves." (*Gilberston v. Albright* (9th Cir. 2004) 381 F.3d 965, 978; emphasis in original.)

In this case, there is no parallel state action brought by the Plaintiff. Therefore, the *Younger* abstention doctrine is not applicable.

However, abstention is appropriate "in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law. (citations.)" (*Allegheny County v. Frank Mashuda Co.* (1959) 360 U.S. 185, 189, citing *Railroad Commission of Texas v. Pullman Co.* (1941) 312 U.S. 496 as well as numerous other cases.) In other words, "when a federal constitutional claim is premised on an unsettled question of state law, the federal court should stay its hand in order to provide the state courts an opportunity to settle the underlying state law question and thus avoid the possibility of unnecessarily deciding a constitutional question." (*Harris County Commissioners Court v. Moore* (1975) 420 U.S. 77, 83).

The *Pullman* abstention doctrine is a discretionary principle that flows from a court's equity powers. (*See Baggett v. Bullitt* (1964) 377 U.S. 360, 375, "[the *Pullman* abstention doctrine] is not an automatic rule applied whenever a federal court is faced with a doubtful issue of state law; it rather involves a discretionary exercise of a court's equity powers.") Thus, whereas the *Younger* abstention doctrine aims to avoid interference with a state's vital functions, the *Pullman* abstention doctrine defers to state court interpretations of state law, not only out of concern for comity, but also to avoid " 'premature constitutional adjudication' " that would arise from "interpreting state law without the benefit of an authoritative construction by state courts." (*Gilbertson, supra,* 381 F.3d at 971 n. 6.)

In this case, Plaintiff's claim, indeed the existence of any contract or contractual right, is completely predicated on state law. This is because Plaintiff has not alleged the existence of any written contract. Rather, Plaintiff attempts to imply the contractual terms based on a City resolution (Complaint ¶ 20), a City ordinance (*Id.* at ¶ 21), hearsay statements (*Id.* at ¶ 22), and

Document Number: 345720

City of San Diego's Supp. Brief re:
Motion to Dismiss

7

12CV0159H WMC

1 conclusions of law (*Id*. at ¶¶ 32-33.)  Therefore, the mere existence of Plaintiff's alleged contract
2 will depend on state law.
3      Next, if a contract does exist under California state law, Plaintiff has alleged that O-20105
4 violates the contract clause of the California Constitution.  The determination of whether or not
5 Plaintiff's retiree health benefits are vested contractual rights or longevity benefits involve issues
6 of state law. (See e.g. *San Bernardino Pub. Employees Association v. City of Fontana* (1998) 67
7 Cal.App.4th 1215, 1224, longevity benefits, including pay and leave accrual increases based on
8 longevity, as provided for by memorandums of understanding between the city and its bargaining
9 groups, "could not have become permanently and irrevocably vested as a matter of contract law,
10 because the benefits were earned on a year-to-year basis under previous memorandums of
11 understanding that expired under their own terms.")
12      Thus, a decision by a California state court on both the issue of the existence of a contract
13 and whether that alleged contract, if it exists, violates the California Constitution's contract clause
14 may not only narrow, but eliminate, any need for federal Constitutional adjudication regarding
15 Plaintiff's claim under the Contract Clause.  Therefore, pursuant to the *Pullman* abstention
16 doctrine, this Court should abstain from hearing any federal Constitutional claim until a state
17 court has determined if a contract even exists between Plaintiff and the City and, if so, whether O-
18 20105 violates the California Constitution's contract clause.

19 **E.     State Court Cases**

20      The Court requested that the parties identify state court cases involving modification of
21 active or retired City employee pension benefits, health care benefits, vested rights and/or retiree
22 health benefits.  Since 2005, the following state court cases fit within the defined criteria:
23      (1)     *Levitt et al. v. City of San Diego*, San Diego Superior Court case number 37-2010-
24           00094272-CU-OE-CTL, Fourth District Court of Appeal case number D060049.
25           This case involved claims that health care benefits and retiree health care benefits
26           are vested benefits.
27
28

(2) *San Diego Municipal Employees' Association v. City of San Diego*, San Diego Superior Court case number 37-2011-00090476-CU-MC-CTL.  This case involved a claim that the City's retiree health benefits are vested contractual rights.

(3) *San Diego City Employees' Retirement System v. City Attorney Michael Aguirre*, San Diego Superior Court case number GIC841845.  This case involved a challenge to numerous pension benefit enhancements granted beginning in 1996.

(4) *City of San Diego v. San Diego City Employees' Retirement System,* San Diego Superior Court case number 37-2007-00081912-CU-WM-CTL, Fourth District Court of Appeal case number D054688.  This case involved a challenge by the City related to the pension fund charging the City for pension service credits purchased by City employees.

(5) *San Diego Municipal Employees' Association v. City of San Diego*, San Diego Superior Court case number 37-2008-00096145-CU-BC-CTL.  This case involved a claim that the City pension of one of the past presidents of the San Diego Municipal Employees' Association should be calculated based on a combination of both her union and City salary.

(6) *San Diego City Firefighters, et al v. City of San Diego, et al.*, San Diego Superior Court case number 37-2009-00099066-CU-CM-CTL; Fourth District Court of Appeal case number D057437.  This case involved a claim that the City pension of one of the past presidents of the San Diego City Firefighters' union should be calculated based on a combination of both his union and City salary.  This case also involved a claim by individual firefighters that they should be able to convert accrued vacation time into pension service credits.

(7) *Collins et al. v. City of San Diego*, San Diego Superior Court case number 37-2009-00088422-CU-BC-CT; Fourth District Court of Appeal case number D057543.  This case involved a claim that the City pensions of three of the past presidents of the San Diego Police Officers Association should be calculated based on a combination of both their union and City salary.

Document Number: 345720

City of San Diego's Supp. Brief re: Motion to Dismiss

9

12CV0159H WMC

(8) *Blizzard v. San Diego Municipal Employees' Association et al.,* San Diego Superior Court case number 37-2008-00093217-CU-OE-CTL.  This case involved a claim that plaintiff's base compensation for pension purposes should include certain overtime pay.

(9) *McElroy v. City of San Diego,* San Diego Superior Court case number 37-2009-00081178-CU-MC-CTL.  This case included a claim by various individual police officers that certain overtime pay should be used to calculate their highest salary for pension purposes.

(10) *San Diego Police Officers' Association v. City of San Diego,* San Diego Superior Court case number 37-2009-00081659.  This case included a claim by the San Diego Police Officers Association that certain changes made by the City to pay codes resulted in a reduction in pension salary to some of its members.

(11) *Sloan v. City of San Diego,* San Diego Superior Court case number GIC 848641, Fourth District Court of Appeal case number D049158.  This case included a claim by various individual police officers that certain overtime pay should be used to calculate their highest salary for pension purposes.

(12) *Lopez v. City of San Diego*, San Diego Superior Court case number GIC869054.  This case included a claim by various individual police officers that certain overtime pay should be used to calculate their highest salary for pension purposes.

*(13)* *City of San Diego v. San Diego Municipal Employees' Association et al.,* San Diego Superior Court case number 37-2010-00091207-CU-WM-CTL.  This case involves the issue of how gains and losses of the pension fund should be distributed as between the City and its employees.

/ / /

/ / /

/ / /

Document Number: 345720

City of San Diego's Supp. Brief re: Motion to Dismiss

10

12CV0159H WMC

## III.

## CONCLUSION

For the reasons stated in both the City's Motion to Dismiss and its reply to Plaintiff's opposition to said motion, as supplemented herein, this Court should dismiss Plaintiff's claims for relief.

Dated:  March 29, 2012                          JAN I. GOLDSMITH, City Attorney


                                                By   /s/ Walter C. Chung
                                                     Walter C. Chung
                                                     Deputy City Attorney

                                                Attorneys for Defendant